**Affirmed and Opinion Filed October 9, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00500-CV

## MARCUS JOSEPH ROPER, Appellant
## V.
## KATHERINE ELIZABETH JOLLIFFE, Appellee

On Appeal from the 292nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 13-00611-V-292ND

## OPINION

Before Justices Evans, Brown, and Stoddart
Opinion by Justice Stoddart

This is a statutory appeal from an order granting a family violence protective order. *See* TEX. FAM. CODE ANN. § 85.001 (West 2014). The trial court denied Marcus Joseph Roper's request for a jury and held an evidentiary hearing. The court found Roper committed family violence in the past and was likely to do so in the future against his fiancée Katherine Elizabeth Jolliffe. Roper appeals pursuant to family code section 81.009(a). *Id.* § 81.009(a).

Roper brings four issues on appeal. He argues: (1) the trial court abused its discretion by denying his request for a jury trial; (2) he was denied due course of law when the trial court limited discovery and applied a preponderance of the evidence standard of proof; (3) he was entitled to additional discovery and a higher standard of proof because the protective order procedure burdens his right to keep and bear arms; and (4) the batterer's intervention program

required by statute and the terms of the protective order violate his right against self-incrimination. We overrule Roper's four issues and affirm the trial court's protective order.

**BACKGROUND**

Roper and Jolliffe met in college and began dating. In November 2012, they became engaged. They moved into an apartment together in May 2013. However, they had problems in their relationship. Jolliffe testified Roper was "very emotionally and mentally and physically abusive." Several times during their relationship, Roper became angry, grabbed Jolliffe's wrists and applied "strong pressure and control" even after she asked him to stop. On one occasion, Roper squeezed her so tightly she could not breathe.

Due to their ongoing problems, Jolliffe moved out of the apartment at the end of September 2013. Jolliffe did not have a place to live, so she stayed about half the time with a friend and half the time with Roper. On November 6, 2013, Jolliffe and Roper met at his apartment to talk before a planned counseling session the next day. When Jolliffe arrived, Roper offered her a glass of wine, which she refused because she had a glass of wine earlier at happy hour. Roper became angry with her for refusing the wine and not telling him she was going to happy hour. He also was angry Jolliffe planned to attend a party later in the week without him. Roper went into his room.

After waiting for a while, Jolliffe realized Roper was not coming back out, so she went into his room to say good night. Roper was asleep, but she kissed him and told him she was leaving for the night. He woke up and became angry she was not staying. Jolliffe went to the kitchen to put on her boots, and Roper followed her. He asked when Jolliffe was moving back in with him. She said, "Once we figure out our issues and work through these problems." Roper then said, "Give me back the fucking ring." Before she could respond, Roper tackled her, and she landed on the floor in the dining room. Roper pinned her to the ground, twisted her arms and

–2–

shoulders, and tried to remove the ring from her finger. Jolliffe screamed for him to stop, but he continued until she threatened to scream loudly enough for the police officer next door to hear.

Roper released Joliffe. When she was on her knees trying to get up, he screamed, "You fucking bitch, this relationship is over," grabbed her right arm, and pulled it back so hard they heard her shoulder "pop." Roper released her arm. He then grabbed her purse and threw it over her head. Jolliffe gathered her things, tried to call a friend, and left the apartment. Jolliffe went to another friend's apartment in the same complex and called the police. The police responded and reported that Jolliffe was crying, shaking, and visibly upset. They took a statement from her, completed a "lethality screen form," noted visible marks on her body, and took photographs of red marks on her arm, back, and shoulder. Jolliffe stated she was not injured and declined transport to the hospital. The officers were unable to make contact with Roper.

On November 13, 2013, Jolliffe met with the district attorney's office and filed an application and affidavit for a protective order against Roper. A temporary ex parte protective order was signed by the trial court on November 18, 2013. A hearing was set on the final protective order for November 26, 2013.

Roper was served with notice of the application, the ex parte order, and a copy of the application for protective order on November 20, 2013. The notice advised Roper of the punishment for violating the order, the date for the hearing on the final protective order, and his right to hire an attorney. In addition to filing an answer and a motion for expedited discovery, Roper requested a jury trial. The trial court granted Roper limited discovery but denied his request for a jury trial.[1] After three extensions of the temporary ex parte order, the final hearing was held on January 28 and 29, 2014.

---

[1] The trial court permitted Roper to conduct depositions of Jolliffe and two of her friends with limited document production from each witness. The record includes a reporter's certificate for Jolliffe's deposition. According to representations of counsel at the hearing on the motion for new trial, only Jolliffe was deposed.

Roper did not testify. Instead he offered the testimony of a clinical psychologist who, after performing an assessment of Roper, concluded that he was at low risk of committing future acts of violence. However, she could not say there was no future risk. Ultimately, the trial court found that family violence had occurred in the past and was likely to continue in the future. The trial court granted the protective order on January 29, 2014. The order prohibits Roper from committing family violence against Jolliffe; communicating directly with her or her family in a threatening or harassing manner; communicating a threat to her; going within 500 feet of her residence, place of employment, or school; engaging in conduct directed toward her reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass her; and possessing a firearm. The protective order also requires Roper to complete a Batterer's Intervention and Prevention Counseling Program (BIPP). The protective order is effective for two years.

Roper moved to stay the BIPP requirement pending exhaustion of his appeals, which the trial court granted. Roper's motion for new trial was denied after a non-evidentiary hearing.

## ANALYSIS

### A. Denial of Request for Jury Trial

In his first issue, Roper argues the trial court abused its discretion by denying his request for a jury trial. He contends he has the right to a jury trial under the Texas Constitution and timely requested a jury under the rules of civil procedure. *See* TEX. CONST. arts. I, § 15, V, § 10; TEX. R. CIV. P. 216. We review the trial court's denial of a request for a jury trial for an abuse of discretion. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). We consider the entire record and determine whether the trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*

#### 1. Title 4 Protective Orders

Title 4 of the family code, titled "Protective Orders and Family Violence," was originally

passed in 1979 and establishes the procedure for issuance and enforcement of family violence protective orders. *See* Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 11, 1979 Tex. Gen. Laws 182, 185, *repealed and reenacted by* Act of April 21, 1997, 75th Leg., R.S., ch. 34, §§ 1, 2, 1997 Tex. Gen. Laws 76, 76, 88 (current version at TEX. FAM. CODE ANN. §§ 71.001–92.001 (West 2014)). The legislature's stated intent was to "reduce the high incidence of deaths and injuries sustained by law enforcement officers in handling family disturbances and to aid law enforcement officers in protecting victims of family violence from serious or fatal injuries." Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 1, 1979 Tex. Gen. Laws 182, 182 (repealed and reenacted 1997).

The statutory definition of "family violence" includes "dating violence." TEX. FAM. CODE ANN. § 71.004(3). "Dating violence" includes violence against a victim with whom the actor is in a dating relationship. *See id.* § 71.0021(a).[2] Dating violence means an act, other than a defensive measure, committed against a victim intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the victim in fear of imminent physical harm, bodily injury, assault, or sexual assault. *Id.* There is no dispute that Roper and Jolliffe were involved in a dating relationship. *See id.* § 71.0021(b).

The applicant for a protective order is entitled to a hearing not later than fourteen days after the date of filing an application unless the applicant requests a later date. *Id.* § 84.001(a). At the close of the hearing on the application for a protective order, the trial court must find whether family violence has occurred and is likely to occur in the future. *Id.* § 85.001(a). If the court makes those findings, it must render a protective order applying to the person found to have

---

[2] Section 71.0021(a) was amended effective September 1, 2015, to apply to acts committed against an applicant for a protective order. TEX. FAM. CODE ANN. § 71.0021(a) (West, Westlaw through 2015 Sess.). We cite the language of the statute in effect at the time the application for a protective order was filed in this case. *See* Act of May 23, 2011, 82nd Leg., R.S., ch. 872, § 2, 2011 Tex. Gen. Laws 2215, 2215.

committed family violence. *Id.* §§ 81.001, 85.022. Generally, a protective order is effective for a period not to exceed two years. *Id.* § 85.025(a). The respondent may move to terminate the protective order after its first anniversary. *Id.* § 85.025(b). Despite the statute's language indicating that the court is the fact finder for protective orders, Roper argues he was entitled to a jury trial.

The Fort Worth Court of Appeals has addressed whether there is a right to a jury trial in Title 4 protective order proceedings. *See Williams v. Williams*, 19 S.W.3d 544, 546 (Tex. App.—Fort Worth 2000, pet. denied). The *Williams* court examined the language of Title 4 and concluded it was clear and unambiguous. *Id.* at 546–47. Interpreting sections 81.001 and 85.001(a), the court found the plain and common meaning of the statutory language showed the legislature's intent that the court act as the "*sole fact finder.*" *Id.* at 547 (emphasis added). The court concluded, "The statutory definition of 'court' and the legislature's omission of 'jury' and 'trier of fact,' *make clear that the legislature intended that courts, not juries, have the responsibility of making the findings necessary* for the issuance of a family violence protective order." *Id.* (emphasis added).

The Fort Worth court's analysis is persuasive. Reading the plain language of Title 4, as the *Williams* court did, we conclude the statute did not give Roper the right to have a jury act as the fact finder in this case. The statute makes clear that the legislature intended that courts, not juries, act as the sole fact finders and have the responsibility for making the findings necessary for the issuance of a family violence protective order. *Id.*

We acknowledge that *Williams* is distinguishable because the respondent in that case failed to timely request a jury under rule 216 of the rules of civil procedure and, on that basis, the *Williams* court concluded the trial court did not err by denying the request for a jury. *See* TEX. R. CIV. P. 216; *Williams*, 19 S.W.3d at 546 (jury requested day of hearing). In the case before us,

Roper timely requested a jury in writing and tendered the fee more than thirty days before the hearing.[3] However, we agree with the Fort Worth court's reading of the statute and conclude this distinction is not material to our analysis.

Although the family code does not provide Roper with the right to a jury, our analysis does not end there. Roper also argues he has a right to a jury protected by the Texas Constitution.

### 2. Constitutional Provisions

Texas has two constitutional provisions addressing the right to trial by jury in civil cases: article I, section 15 and article V, section 10.

#### a. Article I, Section 15

Article I, section 15 states, "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency . . . ." TEX. CONST. art. I, § 15. This provision grants the right to a jury for those actions, or analogous actions, where a jury was available when the constitution was adopted in 1876. *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 636 (Tex. 1996).

The jury provision in article I, section 15 is similar to those found in the United States Constitution and virtually every other state constitution. *See State v. Credit Bureau of Laredo, Inc.*, 530 S.W.2d 288, 291 (Tex. 1975). These provisions have been interpreted to preserve the right to a jury trial in all actions, or analogous actions, where the right existed at the time each state adopted its constitution. *Id.* "A jury trial is not mandated by this provision for any other judicial proceeding." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 450 (Tex. 1993).

---

[3] Roper contends he timely requested a jury in writing in his December 12, 2013 answer filed more than thirty days before the actual hearing on the application for a protective order. He also tendered the required fee at the same time, although the clerk did not accept the fee. Jolliffe does not dispute the timeliness of Roper's jury demand.

When the Texas Constitution was adopted, civil law did not address domestic violence cases between spouses because of the doctrine of interspousal tort immunity. *See Nickerson v. Nickerson*, 65 Tex. 281, 283 (1886) (tort inflicted on wife by her husband "gave no right of action to the wife against the husband," "no compensation could be given to the wife, through a civil action"), *overruled by Price v. Price*, 732 S.W.2d 316, 316–19 (Tex. 1987) (abolishing interspousal tort immunity doctrine); *see also Abbott v. Abbott*, 67 Me. 304, 306–07 (1877) ("So to speak, marriage acts as a perpetually operating discharge of all wrongs between man and wife, committed by one upon the other."); *Peters v. Peters*, 42 Iowa 182, 183 (1875) (changes in relation of husband and wife "do not yet reach the extent of allowing either husband or wife to sue the other for a personal injury committed during coverture"); *Longendyke v. Longendyke*, 44 Bar. 366, 368–69, 1863 WL 5051 (N.Y. Sup. Ct. Sept. 7, 1863) (common law rule that husband and wife could not sue each other in civil action was not altered by statutes designed to add to wife's property rights as a feme sole).

The family violence protective order statute is part of a governmental scheme enacted in 1979 to address the issue of domestic violence. No such governmental scheme existed in 1876.[4] In 1979, the legislature recognized that the only available civil remedies—a peace bond or a temporary injunction pending divorce proceedings—were inadequate. *See* Senate Comm. on Human Res., Bill Analysis, Tex. C.S.H.B. 1075, 66th Leg., R.S. (1979).[5] The legislature enacted

---

[4] In contrast to criminal and tort actions, proceedings to prevent domestic violence or abuse did not exist at common law and are purely statutory. *Raynes v. Rogers*, 955 A.2d 1135, 1139–40 (Vt. 2008) (rejecting defense of property as a defense to issuance of abuse-prevention order); 25 Am. Jur. 2d *Domestic Abuse and Violence* § 1, Westlaw (database updated May 2015).

[5] The committee explained:

> Under current law, an abused spouse has only two civil recourses: peace bonds (which have proved to be virtually ineffective deterrents), and temporary restraining orders. A temporary restraining order may only be obtained in conjunction with a divorce action; further, it usually takes several days to obtain a temporary restraining order. A battered spouse who needs immediate protection and does not wish to file for divorce currently has no adequate solution under the law.

Senate Comm. on Human Res., Bill Analysis, Tex. C.S.H.B. 1075, 66th Leg., R.S. (1979).

the protective order provisions of Title 4 to provide additional remedies for spouses in need of immediate protection from family violence without the need to file for divorce. *Id.*; *see also* TEX. FAM. CODE ANN. § 81.008 (protective order remedy is cumulative of other remedies provided by law). The remedy was later extended to other relationships such as dating relationships. *See* TEX. FAM. CODE ANN. §§ 71.0021, 71.004; Kellie K. Player, *Expanding Protective Order Coverage*, 43 ST. MARY'S L.J. 579, 584–85 (2012).

Where no common law action or governmental scheme existed in 1876, no jury trial is required. While no Texas case addresses this with respect to Title 4, courts have considered it in other contexts. In *Texas Association of Business*, the supreme court considered the right to a jury trial under article I, section 15 and concluded there was no governmental scheme to balance economic and environmental concerns in 1876. *Tex. Ass'n of Bus.*, 852 S.W.2d at 451. Therefore, agency assessments of environmental penalties were neither actions nor analogous to actions tried to a jury in 1876. *Id.* Similarly, the supreme court in *Barshop* recognized there was no governmental scheme to regulate natural resources such as the Edwards Aquifer Act in 1876. *Barshop*, 925 S.W.2d at 636. The court concluded there was no right to a jury trial for appeals from permit adjudications under the statute because they "are not actions, or analogous actions, which were tried to a jury at the time the Texas Constitution was adopted." *Id.*

Because no common law action or governmental scheme existed in 1876 to address domestic violence, we conclude that proceedings for family violence protective orders are not actions or analogous to actions that must be tried to a jury. We also note that every state has enacted statutes providing for domestic violence protective orders.[6] Yet, no state has found a

---

[6] Between 1976 and 1992, every state enacted civil protection order legislation. Jane C. Murphy, *Engaging with the State: The Growing Reliance on Lawyers and Judges to Protect Battered Women*, 11 AM. U.J. GENDER SOC. POL'Y & L. 499, 502–03 (2003).

right to a jury in a proceeding for a domestic violence protective order.[7]

Roper also argues a family violence protective order is analogous to a permanent injunction, and the right to a jury trial existed in 1876 for cases seeking a permanent injunction. *See Ex parte Allison*, 90 S.W. 870, 871 (Tex. 1906) (parties entitled to jury on questions of fact on hearing for permanent injunction); *see also Citizens State Bank of Sealy, Tex. v. Caney Invs.*, 746 S.W.2d 477, 478 (Tex. 1988) (per curiam) (dicta). To support his argument, Roper cites cases comparing protective orders to permanent injunctions for purposes of determining appellate jurisdiction. *See, e.g.*, *Kelt v. Kelt*, 67 S.W.3d 364, 366 (Tex. App.—Waco 2001, no pet.); *Striedel v. Striedel*, 15 S.W.3d 163, 164 (Tex. App.—Corpus Christi 2000, no pet.); *Winsett v. Edgar*, 22 S.W.3d 509, 510 (Tex. App.—Fort Worth 1999, pet. denied); *James v. Hubbard*, 985 S.W.2d 516, 517 (Tex. App.—San Antonio 1998, no pet.). However, none of these decisions considered whether there is a right to a jury in protective order proceedings. Rather, they decided the very different question of whether the court had jurisdiction over an appeal of a protective order. As explained below, these cases are not relevant to the issue before us.

Before 2005, no statute expressly granted appellate courts specific jurisdiction over appeals from protective orders. *See* TEX. FAM. CODE ANN. § 81.009 (enacted in 2005).[8] Thus it was necessary for appellate courts to determine whether a protective order was a final judgment

---

[7] Courts in other states have held that civil protective orders do not violate the respondent's right to a jury trial. *See* Catherine F. Klein & Leslye E. Orloff, *Providing Legal Protection for Battered Women: An Analysis of State Statutes and Case Law*, 21 HOFSTRA L. REV. 801, 908 (1993). One source states:

> In no jurisdiction is there a right to jury trial in civil protection order cases for the issuance, modification, or extension of a civil protection order. Protection orders are civil in nature and the possibility of a criminal penalty upon violation does not create a right to a jury trial.

*Id.* at 1070.

[8] A protective order is appealable unless it is rendered in a divorce suit or a suit affecting the parent-child relationship, in which case the protective order is appealable when the final order in those cases becomes appealable. TEX. FAM. CODE ANN. § 81.009.

or merely an interlocutory ruling. Most courts concluded that a protective order was appealable if it disposed of all issues and parties in the underlying proceeding. *See Kelt*, 67 S.W.3d at 366; *Striedel*, 15 S.W.3d at 164; *Winsett*, 22 S.W.3d at 510; *James*, 985 S.W.2d at 517.

This Court addressed jurisdiction over appeals of protective orders in *Cooke v. Cooke*, 65 S.W.3d 785, 788 (Tex. App.—Dallas 2001, no pet.). We held that "a protective order rendered pursuant to the family code is a final, appealable order as long as it disposes of all parties and all issues." *Id.* But we explained that our "holding does not depend on the classification of an injunction." *Id.* Although a protective order is "strikingly similar" to a permanent injunction, "we need not classify it specifically as a permanent injunction." *Id.* at 789. "A permanent injunction, like this particular protective order, is appealable based on its disposal of all parties and all issues, not simply based on its classification as a permanent injunction." *Id.*

Permanent injunctions are distinct from family violence protective orders. A permanent injunction is an equitable remedy for some other cause of action and requires a liability finding after a final hearing on the merits. *See Cooper v. Litton Loan Servicing, LP*, 325 S.W.3d 766, 769 (Tex. App.—Dallas 2010, pet. denied); *see also Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 625 n.2 (Tex. 2011) (per curiam). A permanent injunction cannot be granted absent a finding of liability on some underlying cause of action. *Valenzuela v. Aquino*, 853 S.W.2d 512, 514 n.2 (Tex. 1993) ("No final relief, including a permanent injunction, can be granted in a contested case without a determination of legal liability."). A trial court lacks discretion to issue a permanent injunction unless supported by at least one valid underlying cause of action that is established by either conclusive evidence or by fact findings. *See id.* at 513–14.

In contrast, a family violence protective order is obtained through an independent statutory proceeding initiated by filing an application for a protective order with the clerk of the court. TEX. FAM. CODE ANN. § 82.001. No underlying cause of action or liability finding is

required before a court may grant a family violence protective order. *See id.* §§ 81.001, 85.001(b). The purpose of the statute is to provide an expedited procedure for victims of domestic violence; the purpose is not to correct past wrongs or establish liability but to give immediate protection to the applicant. Title 4 is remedial in nature and should be broadly construed to "effectuate its humanitarian and preventive purposes." *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

We do not find Roper's analogy between permanent injunctions and family violence protective orders compelling. The cases he cites address appellate jurisdiction—which is not the issue before us—but do not account for the fundamental differences between permanent injunctions and protective orders. To obtain a permanent injunction, a party must first secure a favorable finding of liability on an underlying cause of action. However, a protective order does not require a party to establish liability on an underlying cause of action, and it is the result of an expedited proceeding. They are dissimilar proceedings, and their underlying purposes are not the same. Roper's analogy between the two proceedings fails.

We conclude family violence protective orders under Title 4 of the family code are not actions or analogous to actions tried to a jury in 1876. Therefore, Roper does not have a right to a jury under article I, section 15.

### b. Article V, Section 10

We next consider whether the family violence protective order is a "cause" within the terms of article V, section 10. TEX. CONST. art. V, § 10. This provision affords the right to have a jury resolve fact questions in "all 'causes' in a Texas district court." *Barshop*, 925 S.W.2d at 636; *see also Credit Bureau*, 530 S.W.2d at 292. It was intended to broaden the right to a jury. *Credit Bureau*, 530 S.W.2d at 292. However, not all adversary proceedings are causes within the meaning of article V, section 10. *See id.*

The Texas Supreme Court in *Credit Bureau* explained:

> The term "cause" is defined in Black, Law Dictionary (4th ed. 1951), as "a suit, litigation, or action. Any question, civil or criminal, litigated or contested before a court of justice." The United States Supreme Court in *Ex parte Milligan*, 71 U.S. 2, 112, 18 L.Ed. 281 (1866), stated that in any legal sense, "action," "suit" and "cause" are convertible terms. The court then defined the terms to mean any legal process which a party institutes to obtain his demand or by which he seeks his right.

*Id.* But "[s]pecial circumstances justify our former holdings that not all adversary proceedings qualify as a 'cause' under [article V, section 10]." *Id.* at 293; *accord Tex. Ass'n of Bus.*, 852 S.W.2d at 450 (recognizing that "in certain types of adversary proceedings the constitutional right to a jury trial does not attach"). For example, the constitution does not confer the right to a jury trial for election contests even though the constitution expressly confers jurisdiction on district courts to hear such disputes. *Hammond v. Ashe*, 131 S.W. 539, 539 (Tex. 1910).

For the same reasons a protective order is not analogous to an action tried to a jury in 1876, we conclude it is not a cause within the meaning of article V, section 10. A protective order may be issued without a determination of liability on an underlying cause of action. The purpose of the protective order statute is not to remedy past wrongs or punish prior criminal acts; rather, it seeks to protect the applicant and prevent future violence. *See Boyd*, 425 S.W.3d at 430 (noting humanitarian and preventive purposes of Title 4); *Raynes*, 955 A.2d at 1137 (protective order statutes focus on plaintiff's need for immediate and prospective protection from defendant rather than defendant's liability for abusing plaintiff). Thus, a protective order is not like a "cause" by which a party seeks to obtain his demand or pursue his right. *See Credit Bureau*, 530 S.W.2d at 292.[9] Like election contests, protective order proceedings are "proceedings specially

---

[9] In many respects, the protective order statute is similar to the old peace bond procedure whereby a person accused of threatening another could be required to post a bond to keep the peace. No right to a jury attached to those proceedings. *See Ex parte Garner*, 246 S.W. 371, 372 (Tex. Crim. App. 1922) ("[W]e understand that at common law the power to require security to keep the peace and in default thereof to detain the offender was a power exerted by the magistrates without the intervention of a jury.").

created and controlled by the statutes which allow them." *Hammond*, 131 S.W. at 539.

In *Teel v. Shifflett*, 309 S.W.3d 597, 604–06 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), Justice Yates's concurring opinion concluded that the legislature's power to pass laws to maintain the efficiency of jury trials included passing laws for proceedings for family violence protective orders. *Id.* (Yates, J., concurring). By requiring a hearing within fourteen days on an application for protective order, the legislature recognized the "immediate nature of most family protective orders." *Id.* at 606. Thus, special circumstances indicate that family violence protective orders are not causes within the right to a jury under article V, section 10. *Id.* at 605.

The legislature addressed the problem of domestic violence in 1979 by creating a new civil scheme to combat the problem.[10] The dynamics and intractability of violence in intimate relationships[11] and society's history of ignoring the problem[12] bring family violence protective orders within the special circumstances exception in *Credit Bureau*. The delay and expense inherent in jury trials make them unsuitable for protective orders because of the serious need for an expedited and efficient procedure to prevent family violence. As Justice Yates noted, allowing a jury trial would permit the respondent to delay the hearing and disadvantage the applicant. *See id.* at 606. Such a result is contrary to the design and purpose of the statute.

We conclude family violence protective orders are proceedings specially created by the legislature to address family violence and are not "causes" within the meaning of the constitution. Therefore, Roper does not have a right to a jury under article V, section 10.

---

[10] *See* James Martin Truss, Comment, *The Subjection of Women . . . Still: Unfulfilled Promises of Protection for Women Victims of Domestic Violence*, 26 ST. MARY'S L.J. 1149, 1175 (1995) ("Recognizing the urgency of a victim's predicament, the legislature designed a relatively expedient and inexpensive scheme for obtaining protective orders.").

[11] *Id.* at 1165–74 (discussing the dynamics of power and control that define the battering relationship).

[12] "For decades, violence and sexual assault among family members or intimate partners were viewed as private matters not meant to be dealt with by the judicial system." Paula Pierce & Brian Quillen, *No Contest: Why Protective Orders Provide Victims Superior Protection to Bond Conditions*, 40 AM. J. CRIM. L. 227, 228 (2013).

### 3. Summary

Family violence protective orders find their genesis in Title 4 of the Texas Family Code as enacted in 1979. By its plain language, Title 4 vests trial courts, and not juries, with the power to make the findings necessary for the issuance of protective orders. From a constitutional perspective, protective orders, while having some features of injunctions, are not analogous to actions tried before juries by statute or common law in 1876. Furthermore, special circumstances relating to family violence compel us to conclude that family violence protective orders are not "causes" as that term is used in the Texas Constitution. Thus, Roper has not shown he has a right to a jury trial under the plain meaning of Title 4, article I, section 15 or article V, section 10 of the constitution. As such, the trial court did not abuse its discretion by denying Roper's request for a jury trial. We overrule Roper's first issue.

### B. Due Process

Because Roper's second and third issues both address his due process claims, we discuss them together. Specifically, Roper complains he was denied due process as it relates to his entitlement to additional discovery, disclosure of evidence, and a clear and convincing standard of proof. Roper further asserts his liberty interests and right to bear arms are not adequately protected by the procedural safeguards for issuance of protective orders.

In resolving these issues, we first determine whether Roper has a liberty or property interest entitled to procedural due process protection and, if so, we determine what process is due. *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).[13] Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Than*, 901 S.W.2d at 930.

---

[13] Roper does not distinguish between the due course of law provision of the Texas Constitution and the due process provision of the Fourteenth Amendment. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19. Federal interpretations of procedural due process are persuasive authority in applying our due course of law guarantee. *Than*, 901 S.W.2d at 929.

What process is due is measured by a flexible standard that includes three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Than*, 901 S.W.2d at 930.

The terms of the protective order prohibit certain conduct and require Roper to complete the BIPP counseling program. Roper does not claim a protected liberty interest in committing acts of family violence, communicating threats, or engaging in conduct directed specifically toward Jolliffe or her family that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass her. *See id.* at 929 (procedural due process applies only to deprivations of constitutionally protected liberty or property interests).

Roper is restrained from going within 500 feet of Jolliffe's residence, place of work, or school, although he presented no evidence that he had any legitimate reason to go to those places. Roper also is prohibited from possessing a firearm during the term of the family violence protective order, but he is not deprived of ownership. We accept for the sake of argument that Roper has some liberty interest in being free of the requirement to complete a batterer's intervention and prevention program; however, Roper's participation in the program was stayed by the trial court at Roper's request. With these interests in mind, we conclude that some process is due. However, we do not agree that Roper was denied sufficient due process in this case.

Roper contends he was denied a meaningful opportunity to defend himself by a lack of discovery and by the State's non-disclosure of evidence. We disagree. Nothing in Title 4 precludes discovery and, in this case, Roper was granted expedited discovery. Roper requested depositions of several people and "targeted" document production. The trial court ordered

depositions of Jolliffe and the two people she contacted the night of the incident along with limited document production. Roper complains he was allowed only a two-hour deposition of Jolliffe the day before the hearing, but nothing in the record explains why the additional depositions were not conducted. Even so, the record indicates Roper was provided important information, including the police report, prosecution report, and Jolliffe's affidavit in support of the application, before the hearing and used this information in preparing his defense.

Next, Roper complains that the State did not produce 911 records and did not disclose its witnesses until the beginning of the hearing. However, there is nothing in the record indicating Roper formally requested this discovery. Roper claims he made an informal discovery request to the State for evidence in its possession and cites fifteen pages from the motion for new trial hearing. Nothing in those pages indicates Roper made any request, informal or otherwise, in the protective order proceeding for the documents discussed at the hearing. In civil cases, discovery requests are controlled by rule and subject to the trial court's orders. An informal request does nothing to obligate another party to respond to the request and does not invoke the court's power to order or compel discovery. *See* TEX. R. CIV. P. 192.1 (permissible forms of discovery); *id.* 215 (process for compelling discovery if party does not respond to discovery requests).

On this record, we cannot say Roper was denied a meaningful opportunity to defend himself. He called witnesses and had the right to subpoena other witnesses if necessary. He was represented by counsel. He fully cross-examined Jolliffe's witnesses and called a witness to impeach Jolliffe about what she told her friends of the incident. He retained an expert and provided her with information she needed to render her opinion.

While the statute requires a hearing within fourteen days of filing an application, safeguards are provided if the respondent is not served until shortly before the hearing. *See* TEX. FAM. CODE ANN. §§ 84.003, 84.004 (hearing to be rescheduled for failure of service or

insufficient notice). Here, Roper had more than three months (November 20 to January 28) to prepare for the hearing. Roper had a meaningful opportunity to be heard in this case.

This case is unlike the cases relied on by Roper where decision makers received evidence ex parte or there was no hearing at all.[14] In this case, evidence was presented at an adversarial hearing with the right to call and confront witnesses before a district judge.

Roper's last due process challenge is that an elevated standard of proof should apply in protective order cases. Roper contends Title 4 proceedings, while classified as civil proceedings, have quasi-criminal overtones and should be based on a clear and convincing standard of proof. We previously concluded that Title 4 proceedings are civil proceedings. *See Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 271 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.) ("An application for a protective order is a civil matter. Accordingly, the trial court had no authority to conduct its own competency evaluation of appellant."). The legislative history also indicates the legislature intended protective order proceedings to be civil in nature. *See* Senate Comm. on Human Res., Bill Analysis, Tex. C.S.H.B. 1075, 66th Leg., R.S. (1979). The interests at stake in this case do not equate to cases that require proof by clear and convincing evidence, such as the involuntary termination of parental rights or commitment for mental illness. *See In re G.M.*, 596 S.W.2d 846, 846–47 (Tex. 1980); *Addington v. State*, 588 S.W.2d 569, 570 (Tex. 1980) (per curiam). Because Title 4 proceedings are civil in nature, the traditional standard of proof by a preponderance of the evidence applies. The legislature has not required a higher standard of proof and none of Roper's

---

[14] In *Than*, the hearing officer was permitted to receive evidence by reviewing the examination room without Than being present. *Than*, 901 S.W.2d at 930–31. This ex parte presentation of evidence deprived Than of a meaningful opportunity to be heard. *Id.* In *Williams*, the court decided that a regulation giving the school superintendent the right to suspend a student for an additional thirty days without a hearing violated the student's due process rights. *Williams v. Dade Cty. Sch. Bd.*, 441 F.2d 299, 302 (5th Cir. 1971). In *Greene*, the Department of Defense revoked the security clearance for a private employee in an administrative proceeding based on confidential reports never made available to the employee. *Greene v. McElroy*, 360 U.S. 474, 479 (1959). The Supreme Court found the failure to permit the employee any opportunity to confront the evidence against him or to cross-examine the witnesses violated due process. *Id.*

arguments persuade us that a higher standard of proof is required by due process.[15]

We conclude the protective order statutes and the proceedings in this case did not violate Roper's rights to due process or due course of law. We overrule Roper's second and third issues.[16]

## C. BIPP Program Requirement

Roper's fourth issue asks this Court to "strike the BIPP requirement because it violates the First, Fifth, and Fourteenth Amendments and correlative provisions of the Texas Constitution's Bill of Rights." Roper did not raise his First and Fourteenth Amendment complaints in the trial court, thus they are not preserved for appeal. TEX. R. APP. P. 33.1; *see In re Commitment of Fisher*, 164 S.W.3d 637, 656 (Tex. 2005) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal, so that the trial court has the opportunity to rule on the issue."); *Tex. Dep't of Protective & Regulatory Servs. v. Sherry*, 46 S.W.3d 857, 861 (Tex. 2001). Furthermore, the record indicates Roper never requested the trial court strike the BIPP requirement from the order. After the hearing, Roper requested and the trial court granted a stay of the BIPP requirement pending exhaustion of his appeal. Roper alleged, on information and belief, that a condition of completion of the BIPP is an admission of guilt and because criminal proceedings were pending

---

[15] We recently addressed a similar argument in *Turner v. Roberson*, No. 05-11-01272-CV, 2013 WL 2152636, at *3–4 (Tex. App.—Dallas May 17, 2013, no pet.) (mem. op.). Turner argued a protective order prohibiting his contact with his child effectively terminated his parental rights and required a clear and convincing standard of proof. *Id.* We concluded, however, that the protective order was authorized by family code section 85.022(b) and did not terminate his parental rights to his child. *Id.* at *4. Thus, proof by clear and convincing evidence was not required. *Id.* We also concluded Turner was not entitled to appointed counsel in a protective order proceeding. *Id.*

[16] None of Roper's issues on appeal challenge the sufficiency of the evidence under the preponderance of the evidence standard. In a single sentence in a footnote, he states merely that the evidence does not meet the preponderance of the evidence standard. To the extent he attempts to raise a sufficiency challenge in his post-submission letter, it comes too late and we will not consider it. Furthermore, in cases involving family violence protective orders, evidence that a person has engaged in violent conduct in the past permits an inference that the person will continue this behavior in the future. *Teel*, 309 S.W.3d at 604. "Oftentimes, past is prologue; therefore, past violent conduct can be competent evidence which is legally and factually sufficient to sustain the award of a protective order." *Id.* (quoting *In re Epperson*, 213 S.W.3d 541, 544 (Tex. App.—Texarkana 2007, no pet.)).

against him, this requirement would violate his Fifth Amendment rights. He did not, however, request the trial court to strike the BIPP requirement from the protective order. He requested only a stay which the trial court granted. He requested the same relief—a stay—at the hearing on the motion for new trial, and the trial court granted that request. Thus, the trial court granted Roper all the relief he requested, and he has not shown the trial court committed reversible error.

We conclude Roper has not preserved his complaints about the BIPP requirement for appellate review. We overrule his fourth issue.

### CONCLUSION

Because he did not show that the respondent is entitled to a jury trial in a family violence protective order hearing, Roper failed to show the trial court abused its discretion by denying his jury request. Roper also failed to show he was entitled to additional due process protections greater than those provided to him. Finally, he did not preserve his complaints regarding the counseling requirement in the protective order. Therefore, the trial court did not err by granting the protective order.

We affirm the trial court's order.

/Craig Stoddart/
_____
CRAIG STODDART
JUSTICE

Evans, J., Dissenting

140500F.P05

–20–



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

MARCUS JOSEPH ROPER, Appellant

No. 05-14-00500-CV          V.

KATHERINE ELIZABETH JOLLIFFE, Appellee

On Appeal from the 292nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. 13-00611-V-292ND.
Opinion delivered by Justice Stoddart. Justices Evans and Brown participating.

In accordance with this Court's opinion of this date, the trial court's protective order is **AFFIRMED**.

It is **ORDERED** that appellee Katherine Elizabeth Jolliffe recover her costs of this appeal from appellant Marcus Joseph Roper.

Judgment entered this 9th day of October, 2015.