**Affirmed and Opinion filed November 19, 2020.**



In The

# 𝕱𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-18-01026-CV

**CHARLES ROY RODRIGUEZ, Appellant**

**V.**

**JANE DOE, Appellee**

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 96717-F**

## OPINION

Appellant Charles Rodriguez appeals a family violence protective order signed by the trial court on November 14, 2018. In a single issue, Rodriguez asserts that the provision in the trial court's protective order prohibiting Rodriguez from going within 500 feet of any location where Jane Doe is located exceeds the scope of protection allowed by section 85.022(b) of the Family Code. For the reasons set forth below, we affirm.

# I.   BACKGROUND[1]

In May 2018, applicant, Jane Doe,[2] filed an application for a protective order from her ex-spouse, Rodriguez.  On August 28, 2018, the trial court conducted a hearing on the merits of the application for protective order.  After examining the record and hearing the evidence, the trial court granted the application and signed a ten-year Final Protective Order on August 30, 2018.

Rodriguez filed a request for findings of fact and conclusions of law.  Rodriguez also filed a motion to modify the protective order under Texas Rule of Civil Procedure 329b.

On October 23, 2018, the trial court signed its Findings of Fact and Conclusions of Law.[3]  Based on the evidence, the trial court concluded that as former spouses Jane Doe and Rodriguez are members of a "family" as that term is defined in section 71.003 of the Family Code.  The trial court also determined that Rodriguez engaged in conduct towards Jane Doe that was intended to result in physical harm, bodily injury, and that Rodriquez had sexually assaulted Jane Doe.  The trial court concluded as a matter of law that Rodriguez's actions constituted family violence as defined by section 71.004(1) of the Family Code and that family violence was likely to occur in the future.  Thus, based on the evidence presented, the trial issued a protective order pursuant to section 85.022 of the Family Code, which contained a list of terms the trial court deemed necessary to protect Jane

[1] Because the parties are familiar with the facts of the case, we set forth only those facts necessary to final disposition of the appeal.  *See* Tex. R. App. P. 47.1.

[2] To protect the appellee's identity, the appellee is referenced by using the pseudonym "Jane Doe."  *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").  In the present case, the trial court found that the acts of Rodriguez against Jane Doe have included a sexual assault.

[3] In this appeal, Rodriguez does not challenge the sufficiency of the trial court's findings of fact or conclusions of law.

Doe from future acts of violence by Rodriguez. Finally, the trial court concluded that a protective order that is effective for a period of ten years, as authorized by section 85.025(a-1)(1), was necessary to protect Jane Doe from Rodriguez.

On November 7, 2018, the trial court heard Rodriguez's motion to modify.[4] At the conclusion of the hearing, the court granted some, but not all, of Rodriguez's requested modifications, and a Final Protective Order reflecting the rulings made at the hearing was signed on November 14, 2018. The Final Protective Order prohibits Rodriguez from engaging in certain conduct, including, as relevant to this appeal, the following:

> 8. Prohibited from going to or near, or within 500 feet of, any location where [Jane Doe] is known by [Rodriguez] to be and further prohibited from remaining within 500 feet after [Rodriguez] becomes aware of [Jane Doe's] presence.

This appeal followed.

## II. ANALYSIS

In his sole issue, Rodriguez argues that the trial court erred by issuing a protective order that prohibited Rodriguez from going near any location where Jane Doe is located because "any location" is not enumerated as one of the prohibited locations in section 85.022 of the Family Code.

---

[4] A reporter's record was made of the hearings, but a transcript of the hearings has not been made part of the appellate record. The appellant bears the burden to bring forward on appeal a sufficient record to show the error committed by the trial court. *Davis v. Angleton Indep. Sch. Dist.*, 582 S.W.3d 474, 482–83 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see also Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam) ("The burden is on the appellant to see that a sufficient record is presented to show error requiring reversal."). In the absence of a record containing the relevant evidence considered by the trial court in making its ruling, "[w]e indulge every presumption in favor of the trial court's findings." *See Bryant v. United Shortline Inc. Assurance Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998); *Davis*, 582 S.W.3d at 482–83.

## A. STANDARD OF REVIEW

This case turns on the meaning of several Family Code provisions. We interpret statutes de novo. *Silguero v. CSL Plasma*, 579 S.W.3d 53, 59 (Tex. 2019).

Because it is the Legislature's prerogative to enact statutes, our primary objective is to effectuate the Legislature's intent. *See id.* We therefore interpret statutes based on the plain language chosen by the Legislature unless the surrounding context indicates the Legislature intended a different meaning or the application of the plain language would yield absurd or nonsensical results that the Legislature could not have intended. *Id.* When the statutory text is clear, the text alone is dispositive of the Legislature's intent. *Brazos Elec. Power Coop. v. Tex. Comm'n on Envtl. Quality*, 576 S.W.3d 374, 384 (Tex. 2019).

We accord a statute's terms their common, ordinary meaning unless the Legislature has defined a term, a term has a technical meaning, or a term bears another meaning when read in context. *See id.* We do not interpret statutory words and phrases in isolation from one another. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019). We also consider the statutory framework in which individual provisions reside. *See id.*; *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

We cannot rewrite a statute in the guise of interpreting it. *Pedernal Energy v. Bruington Eng'g*, 536 S.W.3d 487, 492 (Tex. 2017). We can neither add to nor subtract from statutory language. *See Gunn v. McCoy*, 554 S.W.3d 645, 672 (Tex. 2018). We cannot alter a statute's meaning by inserting terms the Legislature omitted. *Silguero*, 579 S.W.3d at 59. Nor can we alter its meaning by interpreting its terms in a way that makes them meaningless or superfluous. *Brazos Elec. Power Coop.*, 576 S.W.3d at 384.

**B.     APPLICABLE LAW**

The parties do not dispute that the protective order in this case was obtained pursuant to section 85.022 of the Family Code. Subsection (b) of this provision states:

> (b)     In a protective order, the court may prohibit the person found to have committed family violence from:
>
> (1)     committing family violence;
>
> (2)     communicating:
>
> (A)     directly with a person protected by an order or a member of the family or household of a person protected by an order, in a threatening or harassing manner;
>
> (B)     a threat through any person to a person protected by an order or a member of the family or household of a person protected by an order; and
>
> (C)     if the court finds good cause, in any manner with a person protected by an order or a member of the family or household of a person protected by an order, except through the party's attorney or a person appointed by the court;
>
> (3)     going to or near the residence or place of employment or business of a person protected by an order or a member of the family or household of a person protected by an order;
>
> (4)     going to or near the residence, child-care facility, or school a child protected under the order normally attends or in which the child normally resides;
>
> (5)     engaging in conduct directed specifically toward a person who is a person protected by an order or a member of the family or household of a person protected by an order, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person;
>
> (6)     possessing a firearm, unless the person is a peace officer, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision; and

5

(7)    harming, threatening, or interfering with the care, custody, or control of a pet, companion animal, or assistance animal, as defined by Section 121.002, Human Resources Code, that is possessed by or is in the actual or constructive care of a person protected by an order or by a member of the family or household of a person protected by an order.

Tex. Fam. Code § 85.022(b).

## C.    APPLICATION

Rodriguez contends that section 85.022 of the Family Code enumerates an exhaustive list of prohibitions a trial court can utilize when issuing a protective order against an individual.  According to Rodriguez, the trial court erred by issuing the protective order in this case because it exceeds the scope of the statutory protections allowed.

The State argues that the trial court did not err by including the challenged provision.  Rather, the State maintains that the trial court's order—ordering Rodriguez to remain outside of a certain distance from Jane Doe's location—meets the express intent of the statute of curbing future violence in a scenario where the trial court has found that physical and sexual violence has occurred.  The State argues that the trial court's issuance of the protective order in this case was within its statutory and equitable authority.

As an initial matter, we observe that our Legislature has condemned family violence:

Family violence is a serious danger and threat to society and its members. Victims of family violence are entitled to the maximum protection from harm or abuse or the threat of harm or abuse as is permitted by law.

Tex. Code Crim. Proc. art. 5.01(a).  The Legislature further instructs us that "[i]n any law enforcement, prosecutorial, or judicial response to allegations of family

6

violence, the responding law enforcement or judicial officers shall protect the victim, without regard to the relationship between the alleged offender and victim.[5] *Id*. art. 5.01(b).

One of the primary tools used in the battle against family violence is a protective order. The Family Code provides that a court shall enter a protective order if it finds that family violence (1) has occurred and (2) is likely to occur in the future. *See* Tex. Fam. Code §§ 81.001, 85.001. In relevant part, "family violence" is defined as:

> [A]n act by a member of a family . . . against another member of the family . . . that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

Tex. Fam. Code § 71.004(1).

"Family violence protective orders find their genesis in Title 4 of the Texas Family Code as enacted in 1979. By its plain language, Title 4 vests trial courts . . . with the power to make the findings necessary for the issuance of protective orders." *Roper v. Jolliffe*, 493 S.W.3d 624, 635–36 (Tex. App.—Dallas 2015, pet. denied). "The legislative intent in passing Title IV was to 'reduce the high incidence of deaths and injuries sustained by law enforcement officers in

---

[5] To that end, the Legislature has formulated multiple procedures and guidelines for the prevention of family violence. *See* Tex. Code Crim. Proc. art. 5.01–5.07 (setting forth duties of police officers, prosecutors, and courts in fight against family violence); Tex. Fam. Code §§ 81.001–88.004 (outlining procedures for the implementation and enforcement of a variety of protective orders including those designed to deter family violence); Tex. Fam. Code §§ 91.001–91.004 (encouraging laypersons who witness family violence to report it to a local law enforcement agency and mandating that medical professionals provide information on shelters and available protective measures to apparent victims of family violence); *see also* Tex. Fam. Code §§ 261.101–261.109 (requiring persons with reason to believe a child's physical or mental health or welfare has been adversely affected by abuse or neglect to make a report).

handling family disturbances and to aid law enforcement officers in protecting victims of family violence from serious or fatal injuries.'" *Jackson v. Jackson*, No. 01–14–00952–CV, 2015 WL 8940117, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 15, 2015, no pet.) (mem. op.) (citing Act of April 19, 1979, 66th Leg., R.S., ch. 98, § 1, 1979 Tex. Gen. Laws 182, 182 (repealed and reenacted 1997)). "The purpose of the statute is to provide an expedited procedure for victims of domestic violence; the purpose is not to correct past wrongs or establish liability but to give immediate protection to the applicant." *Roper*, 493 S.W.3d at 634.

The scope of family violence protective orders will vary considerably depending on the circumstances. This requires courts to construe broadly the provisions of a protective in order, "to 'effectuate its humanitarian and preventive purposes.'" *Roper*, 493 S.W.3d at 634 (quoting *Boyd v. Palmore*, 425 S.W.3d 425, 430 (Tex. App.—Houston [1st Dist.] 2011, no pet.)).

In this context, we review the plain wording of section 85.022. The statute gives trial courts broad discretion: "the court *may* order the person found to have committed family violence to perform acts specified by the court that the court determines are necessary or appropriate to prevent or reduce the likelihood of family violence." *See* Tex. Fam. Code § 85.022(a) (emphasis added). Additionally, giving the trial courts discretion, the statute further provides that "[i]n a protective order, the court *may* prohibit the person found to have committed family violence" from certain conduct. *Id.* at § 85.022(b) (emphasis added).

Here, the trial court's final protective order falls within the ambit of section 85.022(b)(5). *See* Tex. Fam. Code § 85.022(b)(5) ("engaging in conduct directed specifically toward a person who is a person protected by an order or a member of the family or household of a person protected by an order, including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or

embarrass the person"). Even assuming, *arguendo*, it does not fall within section 85.022(b)(5), we reject Rodriguez's contention that section 85.022 limits a trial court's discretion to prohibit a person found to have committed family violence from performing only the seven actions enumerated in the statute. There is no authority that the provisions of section 85.022 were intended to be an exhaustive list of remedies available to a trial court when issuing a protective order that will effectively prevent family violence, and Rodriguez has not cited to any such authority. Such an interpretation is contrary to the permissive language in the statute and falls short of the legislative intent of the statute. For these reasons, we conclude Rodriguez's argument—*i.e.*, because "any location" is not enumerated as one of the prohibited locations in section 85.022 the trial court erred when it issued an order that prohibited him from going within 500 feet of any location that Jane Doe could be found—fails. We hold that the trial court's order falls within section 85.022(b)(5). We further hold that it was within the trial court's discretion to include this provision in the protective order to effectuate the statute's preventative purpose.

We overrule Rodriguez's sole issue.

### III. CONCLUSION

We affirm the trial court's order.


/s/     Margaret "Meg" Poissant
        Justice


Panel consists of Justices Wise, Jewell, and Poissant.

9