**AFFIRM; and Opinion Filed April 26, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-21-00242-CV**
**No. 05-21-00373-CV**

## IN THE INTEREST OF M.C.M. AND M.A.M., CHILDREN

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 366-53554-2020 and 366-50778-2021**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Smith

We deny Mother's April 19, 2023 request for rehearing. On the Court's own motion, we withdraw our March 17, 2023 opinion and vacate the judgments of that date. This is now the opinion of the Court.

Mother, representing herself pro se, challenges the trial court's temporary and final orders in a suit affecting the parent-child relationship (SAPCR) and a final protective order. In five issues, she asserts that a temporary order was improper and unconstitutional; the final SAPCR order[1] and final protective order[2] were

---

[1] Appellate cause number 05-21-00242-CV.

[2] Appellate cause number 05-21-00373-CV.

"structurally defective"; and, in the SAPCR, the trial court erred in failing to provide "procedural safeguards," including appointing counsel and a guardian ad litem. For the following reasons, we affirm.

## Background

Mother and Father began a romantic relationship in late 2005. Their daughter, M.C.M., was born in 2013; a son, M.A.M., was born in 2015. In January 2020, Mother and Father ended their relationship. On June 1, Father filed a SAPCR petition.[3] On June 30, Mother filed a suit for divorce. The trial court subsequently consolidated the SAPCR into the divorce suit.[4]

On August 3, Father filed a motion for temporary orders. Following a hearing, the trial court appointed Mother and Father as temporary joint managing conservators of M.C.M. and M.A.M. and ordered that Father would determine the children's primary residence and Mother would have an expanded possession schedule. The trial court also required both Mother and Father to submit a drug test result within a week.

Mother did not timely submit a drug test result and, on August 25, Father filed a motion requesting that the trial court deem Mother's drug test positive. Mother then filed a drug test result that was positive for methamphetamine and

---

[3] Trial court cause number 366-52880-2020.

[4] Trial court cause number 363-53554-2020 (appellate cause number 05-21-00242-CV). The trial court's order in the divorce suit is the subject of a separate appeal (appellate cause number 05-21-00360-CV).

amphetamine. At a hearing on Father's motion, there was discussion about whether Mother could have tested positive for methamphetamine as a result of consuming prescription Adderall. The trial court required Mother to undergo a second drug test.

On September 16, Father requested a temporary restraining order (TRO) and temporary injunction (TI) and moved to modify the temporary orders. He submitted a declaration and report by a toxicologist, who opined that Mother's positive methamphetamine test result was only possible following consumption of some form of methamphetamine, and not prescription Adderall. The trial court held a hearing on Father's motion and ordered Mother to submit a drug test result negative for methamphetamine as a condition precedent to exercising her scheduled possession of the children.

Mother submitted a drug test result on September 18, but the result indicated that she was not tested for methamphetamine. Father supplemented his TRO and TI application and, on October 5, the trial court signed an order requiring that Mother's possession be supervised until she delivered a 10-panel or higher drug test result that was negative for illicit substances other than those for which she had a valid prescription. The order further required that Mother undergo a substance abuse evaluation.

On January 6, 2021, Father filed an amended second emergency ex parte application for writ of habeas corpus and writ of attachment.[5] Father requested the children's return, alleging that Mother withdrew them from school during his possession period and did not return them. He also moved for additional temporary orders suspending Mother's possession pending trial. During a January 7 hearing, the trial court heard evidence that Mother had failed to surrender possession of the children. The trial court granted Father's application and also entered a temporary order suspending Mother's possession until further order by the court. Mother filed a motion for reconsideration, which was denied.

On January 26, the trial court held a bench trial on the informal marriage. Following Mother's case-in-chief, Father moved for judgment. The trial court granted the motion, finding Mother and Father were not informally married, and entered an order denying Mother's claim of informal marriage and dismissing the divorce action.

The next day, January 27, the trial court held a bench trial in the SAPCR. The trial court also heard argument on a motion for enforcement of possession and access that Father filed before trial. At the close of evidence and arguments, the court entered oral orders into the record that, among other things, Mother and Father would

---

[5] Father previously filed an application for writ of habeas corpus and writ of attachment alleging that Mother kept the children home from school and threatened not to return them for Father's possession over the Thanksgiving holiday. Following a hearing, the trial court denied the motion and allowed Mother to retain possession for the weekend preceding Thanksgiving.

be appointed joint managing conservators, Father would be granted the exclusive right to determine the children's residence, and Mother would have a modified standard possession order. Mother's possession would be supervised for three months, and she was required to do twice monthly drug testing for six months, undergo an alcohol assessment, and take an anger management class. Mother's compliance was a condition to her possession of the children. On the motion for enforcement, the trial court found Mother guilty of possession violations and awarded Father $1,000 in attorney's fees.

On February 5, Mother attempted to remove the children from school during Father's possession period. On February 11, Mother was arrested for assault family violence and, on February 12, Father requested an ex parte temporary protective order and a two-year protective order against Mother.[6] The trial court entered a temporary ex parte protective order and set a hearing on Father's application for a two-year protective order.

On February 22, Father moved the trial court to enter and clarify its SAPCR rulings or, alternatively, for additional orders. Citing the temporary ex parte protective order[7] and Mother's continued disregard for the trial court's orders, Father requested modifications to the trial court's oral SAPCR rulings. Among other things, Father requested that he be designated sole managing conservator of the

---

[6] Trial court cause number 366-50778-2021 (appellate cause number 05-21-00373-CV).

[7] A City of Richardson municipal court also entered an order for emergency protection (case number 202100011414).

children, Mother be designated possessory conservator, and Mother's possession periods be supervised by Hannah's House or another similar supervision facility.

On March 3, the trial court held an evidentiary hearing on Father's motion and his application for a two-year protective order. Thereafter, the trial court entered a final SAPCR order. The order, as Father requested, appointed Father sole managing conservator, appointed Mother possessory conservator, and required Mother's possession to be supervised at a supervision facility. The trial court also entered a final protective order prohibiting Mother for two years from, in pertinent part, committing family violence, communicating with or coming within 250 yards of Father, and having unsupervised possession of the children. Mother filed a motion for reconsideration, which the trial court denied, and a subsequent motion to set aside judgments and for new trial, which was denied by operation of law. On April 5, the trial court issued findings of fact and conclusions of law. This appeal followed.

**Temporary SAPCR Order**

In her first issue, Mother challenges the trial court's January 7, 2021 temporary order, which suspended Mother's possession of and access to the children until January 27, when the trial court entered orders into the record at the conclusion of the SAPCR bench trial. Mother contends the temporary order, issued in connection with Father's application for writ of habeas corpus, was improper and an unjustified "indefinite termination of parental rights" that was cruel and unusual punishment. However, entry of a final order supersedes a temporary order and

–6–

renders moot any complaint about the temporary order. *In re B.W.S.*, No. 05-20-00343-CV, 2022 WL 2712494, at *4 (Tex. App.—Dallas July 13, 2022, no pet.) (mem. op.); *In re M.L.R.*, No. 05-15-00647-CV, 2016 WL 5791530, at *2 (Tex. App.—Dallas Oct. 4, 2016, no pet.) (mem. op.); *In re E.R.W.*, 528 S.W.3d 251, 257 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Because the trial court's March 3, 2021 final SAPCR order superseded the January 7 temporary order, Mother's complaints about the temporary order are moot and, therefore, not subject to appellate review. *See, e.g.*, *B.W.S.*, 2022 WL 2712494, at *4. Accordingly, we overrule Mother's first issue.[8]

## Final SAPCR Order and Final Protective Order

In her second issue, Mother asserts that the final SAPCR order and final protective order are "structurally defective and should be deemed null and void." According to Mother, "the dismissal of the divorce dismissed the SAPCR," and the "protective order should have been superseded by the SAPCR, assuming the SAPCR had been valid." She further complains that (1) the final SAPCR order "de facto" terminates her parental rights, is "fundamentally defective," is "fraught with fraudulent intent," and was "entered without jurisdiction and without consideration of substantive due process rights"; and (2) the final protective order "was fraudulent,

---

[8] We also note that the temporary order did not, as Mother alleges, indefinitely terminate her parental rights. Further, a trial court is authorized to render an appropriate temporary order in a habeas corpus proceeding "if there is a serious immediate question concerning the welfare of the child," TEX. FAM. CODE ANN. § 157.374, and Father properly requested the additional temporary order as part of his amended second emergency ex parte application for writ of habeas corpus.

–7–

and not entered in good faith or out of any clear and present need for its equitable relief." Mother does not provide any record citations or further analysis in support of these complaints under the second issue.[9] From our review of Mother's brief, we understand her complaints to be that the trial court's final orders should be void because (1) dismissal of the divorce action also resulted in dismissal of the SACPR; (2) the final SAPCR order improperly modified the oral orders made by the trial court at the conclusion of the SAPCR bench trial; and (3) the final protective order was "superseded" by the SAPCR.

The divorce suit and the SAPCR, although consolidated, are separate and distinct suits. *See Coleman v. Coleman*, No. 02-21-00368-CV, 2022 WL 7232156, at *2 (Tex. App.—Fort Worth Oct. 13, 2022, no pet.) (mem. op.) (citing *In re Marriage of Morales*, 968 S.W.2d 508, 511 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.)). Further, the record provides no support for Mother's contention that dismissal of the divorce suit also resulted in dismissal of, or otherwise affected, the SAPCR. At the outset of the January 26 bench trial on the informal marriage, the trial court clearly explained that they were going to proceed in a bifurcated manner, taking up the marriage first and then determining issues regarding custody. After

---

[9] Although we construe pro se briefs liberally, a brief fails if we are required to guess about the party's complaints, search the record for facts that may be favorable to a party's position, or conduct research that might support the contentions made. *Joseph v. Willis*, No. 05-16-00995-CV, 2017 WL 1427713, at *1 (Tex. App.—Dallas Apr. 18, 2017, no pet.) (mem. op.); *see also* TEX. R. APP. P. 38.1. We confine our review accordingly.

Mother's case-in-chief, Father moved for judgment. The trial court granted the motion, finding that there was no marriage. The court then stated that they would proceed to the next phase of trial to determine the parent-child relationship and custody of the minor children. The record shows that Mother understood this, and she appeared and presented her case in the SAPCR bench trial the following day. Also on the following day, the trial court entered an Order Denying Claim of Informal Marriage, which specifically, and only, dismissed "the suit for divorce pending between [Mother] and [Father]."

At the conclusion of the SAPCR bench trial, the trial court entered oral orders on the record, including appointing Father and Mother as joint managing conservators and requiring that Mother's possession be supervised by her brother or another individual approved by Father for at least three months. Just weeks later, however, Father filed an application for a protective order along with a declaration stating that, among other things, Mother had jumped on Father's back and choked him during a February 11 birthday dinner for M.C.M. Father also moved the trial court to enter final SAPCR orders appointing him as sole managing conservator and imposing additional restrictions to Mother's possession of and access to the children.

At a March 3 hearing, the trial court heard evidence that, while at a restaurant celebrating M.C.M.'s birthday, Mother verbally threatened Father and subsequently attacked him physically, choking and hitting him at the same time. The court also observed a video recording that showed a February 5 incident involving Mother, the

children, and the children's principal as Mother attempted to take possession of the children just after Father had dropped them off for school. Finding that family violence occurred and was likely to occur in the future, the trial court entered the final protective order, effective for two years. The trial court also entered the final SAPCR order, which appointed Mother possessory conservator, instead of joint managing conservator, and required that her possession of the children be supervised at a facility.

The trial court's written judgment or order controls over the court's oral pronouncements. *In re A.N.G.*, 631 S.W.3d 471, 483 (Tex. App.—El Paso 2021, no pet.); *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Here, the trial court's March 3, 2021 final SAPCR order controls. *See, e.g.*, *In re E.D.*, No. 02-20-00208-CV, 2022 WL 60781, at *10 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.). And, under the circumstances presented, the trial court was free to modify the oral orders entered following the SAPCR bench trial. Indeed, the court was required to consider the evidence of Mother's intentional use of abusive physical force against Father during the pendency of the case in determining whether to appoint Mother as a joint managing conservator. *See* TEX. FAM. CODE ANN. §153.004(a); *see also id*. §153.004(b) (providing that a trial court "may not appoint joint managing conservators if credible evidence is presented of a history or pattern of past or present . . . physical . . . abuse by one parent directed against the other parent, a spouse, or a child . . .").

–10–

Although the evidence related to the protective order is clearly relevant to the SAPCR, the protective order proceeding and the SAPCR are independent of one another. *See Roper v. Jolliffe*, 493 S.W.3d 624, 633–34 (Tex. App.—Dallas 2015, pet. denied) (citing TEX. FAM. CODE § 82.001). The final protective order, which contains restrictions on Mother's possession of and access to the children specifically permitted by the Texas Family Code, *see* TEX. FAM. CODE ANN. § 85.022(b), was not "superseded" by the SAPCR.

In sum, neither the trial court's dismissal of the divorce suit nor the fact that the trial court's final SAPCR order modified some of the orders orally pronounced at the close of the SAPCR bench trial rendered the final SAPCR order void. Nor did the SAPCR suit supersede the protective order proceeding. Because Mother has not shown that either the final SAPCR order or final protective order are void, we overrule her second issue.

## Appointment of Counsel

In her third issue, Mother contends that the trial court's failure to appoint counsel to represent her in the SAPCR proceeding and advise her of her right to appointed counsel was a due process violation.[10] She asserts the "overwhelming complexity would have undoubtedly called for appointment of counsel" in this case

---

[10] Mother states her complaint as one of ineffective assistance of counsel, but she complains about the lack of counsel, not counsel's performance. Mother was represented by counsel until October 15, 2020, when the trial court entered an agreed motion to withdraw. Thereafter, she represented herself pro se except during the March 3, 2021 hearing when her criminal defense attorney was present "to counsel and assist [Mother] with respect to her Fifth Amendment privilege."

involving the "unjust and permanent severance of a relationship between a child and its natural parent." In two motions to reconsider the trial court's January 7, 2020 temporary order, Mother wrote that "[c]ourt-appointment of counsel should be offered."[11] Although Mother never explicitly requested that the trial court appoint counsel or objected to the failure to do so, we assume, without deciding, that her statements constituted an objection sufficient to preserve this issue for appeal.

Mother cites section 107.013, which provides a statutory right to counsel for indigent parents in government-filed termination and conservatorship cases. TEX. FAM. CODE § 107.013(a). There is no similar right, however, in a SAPCR where termination is not sought or even a private termination case. In those cases, the trial court has discretion to appoint an attorney ad litem. *See id*. § 107.021(a).

The U.S. Supreme Court has declined to find that an indigent parent has a due process right to appointed counsel in a termination proceeding. *See Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 31–32 (1981). Instead, the trial court, subject to appellate review, makes the due process determination on a case-by-case basis. *See id*. In making the determination, courts may consider whether (1) the petition contains allegations of neglect or abuse upon which criminal charges could be based;

---

[11] The record also includes a November 30, 2020 Statement of Inability to Afford Payment of Court Costs or an Appeal Bond in Justice Court. On that form, Mother checked the following box:

> I have asked a legal-aid provider to represent me, and the provider determined that I am financially eligible for representation, but the provider could not take my case. I have attached documentation from legal aid stating this.

No documentation was attached to the statement.

(2) expert witnesses are involved; (3) the case presents troublesome points of law, either procedural or substantive; (4) the record indicates that the absence of counsel's guidance rendered the proceedings fundamentally unfair; (5) the presence of counsel would have made a determinative difference; and (6) the parent demonstrates a clear desire to contest the proceedings. *In re L.F.*, No. 02-19-00421-CV, 2020 WL 2201905, at *11–12 (Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.) (citing *Lassiter*, 452 U.S. at 32–33); *In re R.J.C.*, No. 04–09–00106–CV, 2010 WL 816188, at *4 (Tex. App.—San Antonio Mar. 20, 2010, no pet.). The determination is left to the sound discretion of the trial court. *R.J.C.*, 2010 WL 816188, at *4.

This case, however, is not a termination case and does not, as Mother alleges, involve the "permanent severance" of the parent child-relationship. *See, e.g., In re J.J.R.S.*, 607 S.W.3d 400, 407–08 (Tex. App.—San Antonio 2020) (mem. op.), *aff'd*, 627 S.W.3d 211 (Tex. 2021) (rejecting mother's argument that SAPCR order, which appointed aunt and uncle as permanent managing conservators and mother as possessory conservator with visitation rights conditioned on approval of aunt and uncle, "effectively terminate[d] her parental rights"); *J.A.T. v. C.S.T.*, 641 S.W.3d 596, 615–17 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (rejecting argument that family violence protective order effectively terminated parent-child relationship and, thus, entitled father to "procedures and safeguards," including appointment of counsel). Mother retains her parental rights and can seek a modification of the trial court's final SAPCR order in the future upon a showing that

–13–

her circumstances, or the circumstances of Father or the children, have materially changed since the order's entry and modification would be in the children's best interests. *See* TEX. FAM. CODE §§ 156.001, 156.101; *Chad Lee S. v. Melinda A. S.*, No. 02-14-00135-CV, 2015 WL 7820584, at \*12 (Tex. App.—Fort Worth Dec. 3, 2015, no pet.) (mem. op.).

Nor does this case present, as Mother asserts, "overwhelming complexity." One expert, a toxicologist, testified to the results of drug tests that Mother submitted to the trial court. There were no troublesome points of law to address. The allegations in Father's petition did not indicate that Mother would be subject to criminal charges stemming from her relationship with the children. Mother clearly contested the proceedings, and she presented substantial evidence regarding her close relationship with, and care and support of, the children as well as her criticisms of Father's ability to parent the children. However, there also was evidence to support, among others, the following findings of fact by the trial court:

- Mother attempted to interfere with M.C.M.'s urgent oral surgery;

- In August 2020, a hair sample submitted by Mother tested positive for methamphetamine and amphetamine due to Mother ingesting illicit methamphetamine within the preceding 90-day period, she also tested positive for amphetamine in September 2020, and Mother failed to produce any credible evidence that the positive tests for methamphetamine and amphetamine were caused by legally prescribed prescription medication;

- In September 2020, the Texas Department of Family and Protective Services issued an "Unable to Determine" finding on allegations of negligent supervision of the children by Mother;

–14–

- In October 2020, Mother pounded on the doors and windows at Father's home during his possession period and demanded to see the children; Mother also told the children that she was "going to f***ing kill your daddy";

- In November and December 2020, Mother failed to surrender possession of the children at school in violation of temporary orders;

- In January 2021, Mother removed the children from school during Father's possession period one day and unsuccessfully attempted to remove them from school another day;

- In February 2021, Mother waited for Father to drop the children off for school and then grabbed them as if planning to take them; the school principal had to hold M.C.M. to prevent Mother from removing her from the premises;

- Mother committed family violence against Father during the pendency of this case, and it is likely that she will do so again in the future;

- Mother habitually violated court orders during the pendency of this case despite repeated warnings from the court; and

- Mother was not a credible witness.

Mother has not challenged these findings on appeal.

An attorney may have more thoroughly presented Mother's arguments at trial. However, our review of the record does not indicate that a more thorough presentation would have made a determinative difference in the trial court's conclusions that, based on Mother's conduct, it was in the children's best interest for Mother to be appointed possessory conservator with restricted and supervised possession and access. Under these circumstances, we conclude the trial court did

not abuse its discretion by failing to appoint counsel for Mother in the SAPCR. Accordingly, we overrule Mother's third issue.

## Appointment of Guardian Ad Litem

In her fourth issue, Mother claims the trial court erred in failing to appoint a guardian ad litem for the children in the SAPCR. Citing Texas Family Code section 107.021(a-1),[12] Mother asserts a guardian ad litem was necessary because she was "facing de facto/procedural/fraudulent imposition of the termination of [her] parental rights."

Mother never requested that the trial court appoint a guardian ad litem or objected to the trial court's failure to do so. To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the context of the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *In re J.C.*, 594 S.W.3d 466, 473 (Tex. App.—Fort Worth, 2019, no pet.). A party that fails to do so does not preserve its complaint for appellate review. *J.C.*, 594 S.W.3d at 47. This preservation rule applies to constitutional challenges. *Id*. (citing *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993)); *In re A.E.J.*, No. 05-20-00340-CV, 2020 WL 5107293, at *10 (Tex. App.— Dallas Aug. 31, 2020, pet. denied) (mem. op.).

---

[12] Section 107.021(a-1) provides that, in a private termination suit, a trial court must appoint a guardian ad litem if the court finds that the child's interest will not be represented adequately by a party to the suit whose interests are not in conflict with the child's interests. TEX. FAM. CODE § 107.021(a-1).

This Court previously determined that due process did not require review of an unpreserved complaint regarding failure to appoint a guardian ad litem in a private termination of parental rights case. *See A.E.J.*, 2020 WL 5107293, at * 11–12. We likewise conclude that we need not review Mother's unpreserved complaint in this private SAPCR, where termination was never at issue. *See id.* Mother's fourth issue is overruled.

### Equal Protection

In a fifth issue, Mother asserts Texas Family Code sections 107.013 and 263.0061[13] are violations of her right to equal protection. She also asserts, without any further explanation, that denying her right to "family service planning, providing for records access, and expediated [sic] appellate court relief" violated her equal protection rights. In doing so, Mother again characterizes this SAPCR as a private termination case and asserts that she and the children were subjected to "the exact same irreparable harm as parents and children involved in CPS termination cases."

Mother never raised an equal protection argument during the trial court proceedings. Accordingly, we conclude that she failed to preserve her complaints for our review on appeal. *See* TEX. R. APP. P. 33.1(a); *L.M.I.*, 119 S.W.3d at 710–11; *O.L. v. Tex. Dep't of Fam. & Protective Servs.*, 460 S.W.3d 640, 654–55 (Tex.

---

[13] Section 107.013 mandates appointed counsel for indigent parents in termination/conservatorship suits filed by a governmental entity, and section 263.0061 requires the trial court to, "[a]t the status hearing . . . and at each permanency hearing," inform unrepresented parents of "(1) the right to be represented by an attorney; and (2) if a parent is indigent and appears in opposition to the suit, the right to a court-appointed attorney." *See* TEX. FAM. CODE §§ 107.013(a); 263.0061(a).

App.—El Paso 2014, pet. denied) (father's claims that application of the Interstate Compact on the Placement of Children violated his constitutional rights to due process and equal protection were not preserved for appeal when he did not raise any constitutional objections in the trial court). We overrule Mother's fifth issue.

## Conclusion

We affirm the trial court's final SAPCR order and final protective order.

/Craig Smith/
CRAIG SMITH
JUSTICE

210242F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.C.M.
AND M.A.M., CHILDREN,

No. 05-21-00242-CV        V.

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-53554-
2020.
Opinion delivered by Justice Smith.
Justices Pedersen, III, and Goldstein
participating.

We **VACATE** the judgment of March 17, 2023.  This is now the judgment of the Court.

In accordance with this Court's opinion of this date, the trial court's March 3, 2021 Final Order in Suit Affecting the Parent-Child Relationship is **AFFIRMED**.

It is **ORDERED** that Appellee recover his costs of this appeal from Appellant.

Judgment entered this 26th day of April 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF M.C.M.
AND M.A.M., CHILDREN,

No. 05-21-00373-CV      V.

On Appeal from the 366th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 366-50778-
2021.
Opinion delivered by Justice Smith.
Justices Pedersen, III, and Goldstein
participating.

We **VACATE** the judgment of March 17, 2023.

In accordance with this Court's opinion of this date, the trial court's March 3, 2021 Final Protective Order is **AFFIRMED**.

It is **ORDERED** that Appellee recover his costs of this appeal from Appellant.

Judgment entered this 26th day of April 2023.