

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00183-CV

_____

JOHN DONNELLY, Appellant

V.

K.T., Appellee

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. 21-10120-367

Before Kerr, Birdwell, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

Appellant John Donnelly, proceeding pro se, appeals the protective order that the trial court rendered against him for the protection of Appellee K.T.[1] *See* Tex. Fam. Code Ann. §§ 81.001, 85.001; Tex. Code Crim. Proc. Ann. art. 7B.003. Donnelly raises seven issues on appeal: (1) the evidence was insufficient to support the trial court's finding that family violence had occurred; (2) the evidence was insufficient to support the trial court's finding that family violence was likely to occur in the future; (3) the evidence was insufficient to support the trial court's finding that Donnelly had committed acts constituting stalking under the Penal Code; (4) and (5) the trial court erred by not evaluating how two witnesses' "implausible" testimonies impaired the witnesses' overall credibility; (6) Donnelly received ineffective assistance of counsel because his trial counsel failed to question a particular witness; and (7) the protective order's provision prohibiting Donnelly from accessing the university at which he and K.T. were enrolled is an undue and unconstitutional burden on Donnelly.[2] We affirm the trial court's protective order.

---

[1]To protect K.T.'s anonymity, we refer to her and other witnesses by their initials. *See* Tex. R. App. P. 9.8 cmt.; *McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]K.T. asserts that Donnelly's issues on appeal have been waived by his failure to adequately brief them and present sufficient argument to this court. Donnelly, who wrote his brief pro se, has not provided specific record references or citations to any authority, and he fails to include a clear and concise argument for the issues presented for review. *See* Tex. R. App. P. 38.1(i). However, Donnelly has attempted to cite to the record, he has provided a summary of his argument, and he has clearly set out his

## I. Background

Donnelly and K.T. were graduate students at the same university. They were in a dating relationship from May to October 2021 and lived together for part of the relationship. On November 15, 2021, the Denton County District Attorney's Office, on behalf of K.T., filed an application for a protective order[3] against Donnelly alleging that he had engaged in family violence.

K.T. signed an affidavit in support of the application in which she alleged, among other things, that Donnelly had grabbed her by her clothing and arm when she tried to get out of his car, told her that he wanted to hurt her "so bad," threw her phone when she tried to contact help, took his belt off and threw it at her, broke a daybed in their shared apartment, punched a hole in a box, and would not allow her to answer the door when the police were called to their apartment. She also described Donnelly's paranoid and threatening behavior, including accusing her and others of conspiring against him, accusing her of talking to someone else, warning her that "one

---

appellate issues. Despite the inadequacies of his brief, in the interest of justice, we will review the merits of Donnelly's issues as we construe them. *See* Tex. R. App. P. 38.9 (briefing rules to be construed liberally); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S. Ct. 594, 596 (1972) (holding pro se's complaint "to less stringent standards than formal pleadings drafted by lawyers"); *In re J.M.*, No 02-19-00325-CV, 2020 WL 3987581, at *5 (Tex. App.—Fort Worth June 4, 2020, no pet.) (mem. op.); *Perkins v. Hicks*, No. 02-17-00227-CV, 2018 WL 3968489, at *1 n.3 (Tex. App.—Fort Worth Aug. 16, 2018, no pet.) (mem. op.); *Daniels v. Walters*, No. 03-03-00375-CV, 2004 WL 741672, at *1 (Tex. App.—Austin Apr. 8, 2004, pet. denied) (mem. op.).

[3]The Family Code provides authority for a prosecuting attorney to file an application for a protective order. Tex. Fam. Code Ann. §§ 81.007(a), 82.002(d)(1).

day [he is] going to snap," and asking her, "in case [she] disrespect[s him], how would [she] like to be properly buried?" Further, Donnelly had told her that he was "not a fun ex[-]boyfriend to have," that he would fight any new boyfriend of K.T.'s, and that he had bought gasoline to burn down an ex-girlfriend's house when he suspected cheating. Donnelly had explicitly threatened K.T. that the "only way [she was] leaving th[eir] relationship [wa]s in a casket."

K.T. attested that she moved out in October 2021 and that Donnelly did not know where she was living. However, Donnelly contacted her peers to try to find her. He begged her to return and attempted to obtain her location by sharing his location with her. She stated that she was terrified that Donnelly would come after her or the people she lived with, and she was worried about what would happen if he found her.

Based on this information, the trial court entered an agreed temporary protective order and set a hearing on K.T.'s application. Before that hearing occurred, the Denton County District Attorney's Office, on behalf of K.T., filed an amended application for a protective order asserting that Donnelly had engaged in both family violence and stalking. *See* Tex. Penal Code Ann. § 42.072 (stalking statute). The trial court entered another agreed temporary protective order and set a hearing on the amended application.

The trial court conducted a hearing on the application on February 17, 2022, and concluded the hearing on February 22, 2022, and it issued a final protective order pursuant to both the Family Code and the Code of Criminal Procedure. The trial

4

court found that "family violence ha[d] occurred and . . . is likely to occur in the future," that Donnelly committed family violence, and that the order is necessary for the prevention of family violence. The trial court also found that there were reasonable grounds to believe (1) that Donnelly had committed against K.T. the offense of stalking under Section 42.072 of the Penal Code; (2) that he is likely in the future to engage in conduct prohibited by Section 42.072; and (3) that pursuant to Article 7B.003 of the Code of Criminal Procedure, there are reasonable grounds to believe that K.T. is the victim of stalking perpetrated by Donnelly. The trial court prohibited Donnelly, for a period of five years,[4] from committing further family violence; communicating in any manner with K.T.; engaging in conduct directed toward K.T. that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass K.T.; going within five hundred yards of any location where K.T. is known to be; going within five hundred yards of K.T.'s residence, place of employment, business, or school; and possessing a firearm.

On March 10, 2022, Donnelly, proceeding pro se, filed a "Motion for Retrial Due to Ineffective-Assistance of Counsel," which was construed as a motion for new

---

[4]The trial court entered the protective order for a period of two years under the Family Code and five years under the Code of Criminal Procedure to run concurrently.

trial. On May 17, 2022, the motion was overruled by operation of law. Donnelly brought this appeal on May 20, 2022.[5]

## II. Sufficiency of the Evidence

In his first three issues, Donnelly argues that the evidence is insufficient "at a clear and convincing standard" to support the trial court's findings (1) that he had committed family violence, (2) that family violence was likely to continue, and (3) that he had committed stalking.[6] K.T. contends that there is more than sufficient evidence to support the trial court's findings and that, even without the trial court's family-violence findings, the protective order should be affirmed because the stalking finding provides an independent basis to issue the order.

### A. Standards of Review

When the trial court acts as factfinder, we review its findings under the legal- and factual-sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). Accordingly, the legal- and factual-sufficiency standards are proper in appeals from

---

[5]Donnelly had also filed a "Motion to Modify to Facilitate Respondent's Educational Access" requesting the trial court strike "all restrictions [in the protective order] . . . pertaining to [Donnelly's] proximity to and access of his and [K.T.'s] shared place of schooling." On May 20, 2022, the trial court signed an order dismissing the motion to modify for lack of standing under Article 7B.007(b) of the Code of Criminal Procedure. On May 23, 2022—after Donnelly filed this appeal—the trial court conducted a hearing on Donnelly's motion to modify and denied Donnelly's requested relief under Section 87.001 of the Family Code.

[6]Although Donnelly misstates the applicable legal standards, we analyze his first three issues as challenges to the legal and factual sufficiency of the evidence supporting the trial court's issuance of the protective order under either the Family Code or the Code of Criminal Procedure.

protective orders. *Huskins v. Garcia*, No. 02-21-00328-CV, 2022 WL 3905083, at *2 (Tex. App.—Fort Worth Aug. 31, 2022, no pet.) (mem. op.); *Watts v. Adviento*, No. 02-17-00424-CV, 2019 WL 1388534, at *3 n.3 (Tex. App.—Fort Worth Mar. 28, 2019, no pet.) (per curiam) (mem. op.).

### 1. Legal Sufficiency

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-

7

minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence. *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

### 2. Factual Sufficiency

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

Findings of fact are the exclusive province of the factfinder. *Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744 (Tex. 1986). Acting as factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Wilson*, 168 S.W.3d at 819; *Scott v. Wooley*, No. 02-19-00318-CV, 2020 WL 7063292, at *4 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem. op.).

**B. Applicable Law**

Protective orders may be issued pursuant to provisions in both the Family Code and the Code of Criminal Procedure. *See* Tex. Fam. Code Ann. § 82.002 (allowing person to file application for protective order to protect against family violence); Tex. Code Crim. Proc. Ann. art. 7B.003 (allowing person who is a victim of certain criminal conduct to file application for protective order); *see Straughan v. Girsch*, No. 14-20-00763-CV, 2022 WL 2977049, at *3 (Tex. App.—Houston [14th Dist.] July 28, 2022, no pet.) (mem. op.); *Mu v. Tran*, No. 05-21-00288-CV, 2022 WL 1314949, at *1 (Tex. App.—Dallas May 3, 2022, no pet.) (mem. op.).

Under the Family Code, a trial court shall render a protective order if, at the close of a hearing on the application for a protective order, the court finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. §§ 81.001, 85.001. "Family violence" means an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault but not does include defensive measures to protect oneself. *Id.* § 71.004(1). "Member of a household" includes a person who previously lived in a household. *Id.* § 71.006.

Under the Code of Criminal Procedure, protective orders may be rendered to protect victims of certain criminal conduct, including stalking. Tex. Code Crim. Proc.

Ann. art. 7B.001. "If the [trial] court finds that there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking, the [trial] court shall issue a protective order that includes a statement of the required findings." *Id.* art. 7B.003(b). As relevant to this case, a person commits the offense of stalking

> if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>
> (1) constitutes an offense under Section 42.07 [the harassment statute], or that the actor knows or reasonably should know the other person will regard as threatening:
>
> > (A) bodily injury or death for the other person;
> >
> > (B) bodily injury or death for a member of the other person's . . . household or for an individual with whom the other person has a dating relationship; []
>
> . . . .
>
> (2) causes the other person . . . to be placed in fear of bodily injury or death . . . , or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
>
> (3) would cause a reasonable person to:
>
> > (A) fear bodily injury or death for . . . herself;
> >
> > (B) fear bodily injury or death for a member of the person's . . . household or for an individual with whom the person has a dating relationship; [or]
>
> . . . .

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Tex. Penal Code Ann. § 42.072(a). A person commits an offense under Section 42.07

> if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person:
>
> . . . .
>
> (2) threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person . . . ; [or]
>
> . . . .
>
> (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[.]

*Id.* § 42.07(a). In this section, the term "electronic communication" includes "a communication initiated through the use of . . . instant message, network call, a cellular or other type of telephone, a computer, [or] text message." *Id.* § 42.07(b)(1)(A).

**C. Relevant Evidence**

During the protective-order hearing, the trial court heard testimony about the nature of the relationship between K.T. and Donnelly and about several escalating incidents of violence and threatening behavior from Donnelly. Specifically, K.T. testified to the following:

- In July 2021, K.T. witnessed a physical altercation between Donnelly and another individual in which Donnelly pushed and choked the individual. This made her "feel really scared." Donnelly was later arrested for the incident.

11

- On July 29, 2021, K.T. awoke to loud banging and witnessed Donnelly angrily throwing things and damaging property in their apartment after he lost money on cryptocurrency.

- After K.T. and Donnelly moved in together, Donnelly threatened to harm K.T. if she ever called the police or talked to the police.

- Donnelly liked to "choke" K.T. during sexual intercourse, and on one occasion he injured her by squeezing around her neck so hard that it caused "red bumps" to show up on the side of her face and popped a blood vessel in her eye. When K.T. later discussed this incident with Donnelly, he told her that he "enjoys seeing [her] blue and purple."

- On October 23, 2021, Donnelly physically assaulted K.T. After they left a bar, Donnelly became very angry and verbally abusive toward K.T. When they arrived at their apartment, he grabbed her blouse and pulled her by the arm, but she was able to pull away. K.T. was "really scared" and feared that Donnelly was going to shake or choke her like she had witnessed him do in the past.

- Donnelly would monitor and interrupt K.T.'s text communications. K.T. offered evidence that Donnelly had used her iPad to read and intercept her conversation with Donnelly's mother.[7]

- Donnelly had taken pictures of K.T.'s private journal entries and sent the photos to her along with quotes from her journal.

- Donnelly would "excessively text" K.T. when she did not respond to his messages.

- After the relationship ended, Donnelly sent "hundreds of text messages" to K.T. despite a no-contact order in place through their university and despite warnings that he could not contact her.

---

[7]K.T. explained that her text messages synced across her electronic devices, meaning she could access her messages from her iPad, phone, and computer. On one occasion, she had left her iPad at home. While she was messaging Donnelly's mother using a different device, Donnelly was able to see the live conversation from her iPad and began sending his own messages from the iPad.

- Donnelly had been communicating with people that knew K.T. to obtain information about her;

- When K.T. later returned to the apartment to retrieve her belongings, she discovered that Donnelly had left her "weird notes all over the room" and that several of her belongings were missing or had been broken.

- K.T. believed that Donnelly had been stalking her, which made her feel like "a prisoner."

- K.T. felt "really scared about what [Donnelly was] capable of doing, since he seem[ed] to blame [her] for everything that[] happen[ed] to him."

In addition to her testimony, K.T. offered, and the trial court admitted, the following exhibits:

- photographs of the damage to K.T.'s property as a result of Donnelly's violent outburst on July 29, 2021;

- an audio recording of Donnelly's yelling at, cursing at, and verbally abusing K.T.;

- an audio recording of Donnelly and K.T. discussing the October 23, 2021 physical assault;

- screenshots of the text messages between K.T. and Donnelly's mother that Donnelly had monitored and intercepted, including the messages that Donnelly sent from K.T.'s iPad;

- screenshots of the photographs and text messages that Donnelly had sent to K.T. regarding her private journal entries;

- photographs of the "weird notes" that Donnelly had left for K.T. in their apartment when she went back to retrieve her things;

- a police report filed by K.T. about Donnelly's purchase of a firearm and threats to kill her; and

- screenshots of the text messages that Donnelly had sent to K.T. after their relationship ended and in violation of the university's no-contact order.

The trial court also heard testimony from A.O.—K.T.'s friend—who testified that in late October 2021, she had been at a party when she received a phone call from a "hysterical" K.T. She testified that K.T. was whispering and sounded terrified. In the background of the phone call, A.O. could hear "yelling, screaming, banging . . . sounds like something was getting broken." She then heard Donnelly's voice demanding that K.T. get off the phone and stating that he "would [expletive] kill [K.T.] if she did[ not] get off the phone." According to A.O., K.T. had believed that Donnelly would kill her.

J.H.[8] testified that in December 2021, Donnelly stated that he wanted to kill K.T. J.H. also testified that he had seen Donnelly with a firearm and that Donnelly had purchased his own firearm in January 2022. This and the fact that Donnelly had threatened to kill himself prompted J.H. to file a report with the university that he attended with Donnelly. J.H. explained that he thought Donnelly "was a danger of violence."

**D. Analysis**

In reviewing the evidence, we are mindful that the role of determining the witnesses' credibility and the weight to be given to their testimony belongs exclusively

---

[8]Donnelly and J.H. were classmates and close friends. After K.T. and Donnelly's relationship ended, Donnelly stayed with J.H. at J.H.'s apartment for approximately one month.

14

to the factfinder, not to this court. *See Wilson*, 168 S.W.3d at 819; *Scott*, 2020 WL 7063292, at *4; *Watts*, 2019 WL 1388534, at *6. The trial court could have found that K.T., A.O., and J.H. were credible witnesses and could have chosen to believe their testimonies.

From K.T.'s, A.O.'s, and J.H.'s testimonies, the trial court could have concluded that Donnelly physically assaulted K.T. in late October 2021, that Donnelly had several violent outbursts involving throwing things at K.T. and damaging personal property, and that on multiple occasions, Donnelly made threats that reasonably placed K.T. in fear of imminent physical harm or bodily injury. We conclude that the evidence is legally and factually sufficient to support the trial court's finding of past family violence. *See In re A.H.*, No. 02-22-00241-CV, 2023 WL 2805479, at *4 (Tex. App.—Fort Worth Apr. 6, 2023, no pet. h.) (mem. op.); *Watts*, 2019 WL 1388534, at *6; *Finley v. Finley*, No. 02-11-00045-CV, 2015 WL 294012, at *4 (Tex. App.—Fort Worth Jan. 22, 2015, no pet.) (per curiam) (mem. op.).

As for the trial court's finding that Donnelly is likely to commit family violence in the future, evidence of past family violence can constitute sufficient evidence that family violence is likely to occur in the future. *A.H.*, 2023 WL 2805479, at *5; *Huskins*, 2022 WL 3905083, at *3; *Watts*, 2019 WL 1388534, at *6; *Maki v. Anderson*, No. 02-12-00513-CV, 2013 WL 4121229, at *5 (Tex. App.—Fort Worth Aug. 15, 2013, pet. denied) (per curiam) (mem. op.). Given K.T.'s affidavit and testimony, A.O.'s testimony, J.H.'s testimony, and the exhibits admitted at the protective-order hearing,

15

the trial court could have reasonably inferred that Donnelly would continue to act the same way in the future. Further, the trial court could have believed K.T.'s testimony that she feared what Donnelly was capable of if the trial court did not issue a protective order, particularly considering the police report she filed after Donnelly purchased a firearm and threatened to kill her. Donnelly's close friend J.H. also testified that he was concerned about Donnelly's violence. We conclude that the evidence is legally and factually sufficient to support the trial court's finding that Donnelly is likely to commit family violence in the future. *See A.H.*, 2023 WL 2805479, at *5; *Watts*, 2019 WL 1388534, at *6; *Finley*, 2015 WL 294012, at *4.

With respect to the trial court's stalking finding, the trial court could have concluded from K.T.'s testimony that Donnelly engaged in conduct specifically meant to place K.T. in fear of bodily injury or death; that Donnelly knew or should have known that K.T. would regard his conduct as threatening; and that Donnelly's conduct caused K.T. to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. From K.T.'s affidavit and testimony, A.O.'s testimony, and the exhibits admitted at the protective-order hearing, the trial court could have concluded that Donnelly threatened to physically harm or kill K.T. on more than one occasion, that he sent hundreds of text messages to K.T. after their relationship ended, that he sought information about K.T.'s location after their relationship ended, and that he continued to contact K.T.—by text message and by leaving "weird notes" for her in their previously shared apartment—after he knew he had been ordered not

16

to contact her and after she told him that they could not contact each other. And given the volume and nature of Donnelly's threatening and harassing behavior, the trial court could have concluded that Donnelly's course of conduct would have caused a reasonable person to be placed in fear of bodily injury or death; to regard his conduct as threatening; and to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

We conclude that the evidence is legally and factually sufficient to support the trial court's finding that K.T. was the victim of stalking perpetrated by Donnelly. *See* Tex. Penal Code Ann. § 42.072(a); *Hoover v. Guillory*, No. 03-21-00421-CV, 2022 WL 3903124, at *4 (Tex. App.—Austin Aug. 31, 2022, no pet.) (mem. op.) (affirming trial court's finding of stalking when applicant told respondent not to contact her but respondent continued to contact her); *Jones v. Frazier*, No. 01-21-00297-CV, 2022 WL 3588752, at *9 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, pet. denied) (mem. op) (concluding respondent's conduct—instances of physical violence toward applicant and threats to harm or kill applicant—constituted stalking); *Wargocz v. Brewer*, No. 02-17-00178-CV, 2018 WL 4924755, at *4 (Tex. App.—Fort Worth Oct. 11, 2018, no pet.) (mem. op.) (upholding stalking protective order when there was evidence of respondent's repeated efforts to communicate with applicant by email and phone after he knew he had been ordered to cease communication with her).

The evidence was legally and factually sufficient to support the trial court's issuance of the protective order under both the Family Code and the Code of

17

Criminal Procedure. We overrule Donnelly's challenges to the sufficiency of the evidence.

### III. Witnesses' Credibility

In Donnelly's fourth and fifth issues, he contends that the trial court erred "by not evaluating" how A.O.'s and K.T.'s "implausible" testimonies impaired their "overall credibility" as witnesses. Specifically, he asserts that it was not "plausible" for A.O. to testify that, during her phone call with K.T. in October 2021, she was able to overhear the specific threats that Donnelly had made to K.T. Donnelly does not elaborate on his issue with K.T.'s testimony.

As the factfinder, the trial court was the sole judge of the credibility of these witnesses and the weight to be given to their testimonies, and it was free to resolve any conflicts in the evidence and choose which testimony to believe. *Wilson*, 168 S.W.3d at 819; *Scott*, 2020 WL 7063292, at *4. On appeal, we must defer to the trial court's credibility determinations. *Scott*, 2020 WL 7063292, at *3. Indeed, we cannot substitute our judgment for that of the factfinder. *Wilson*, 168 S.W.3d at 819.

The trial court had the opportunity to hear A.O.'s and K.T.'s testimonies and view all evidence first-hand, and it believed enough of their testimonies to find that family violence had occurred, that family violence was likely to occur in the future, that Donnelly had engaged in conduct that constituted stalking under the Penal Code, and that he was likely to engage in such conduct in the future. Deferring as we must

to the trial court's credibility determinations, we overrule Donnelly's fourth and fifth issues.

## IV. Ineffective Assistance of Counsel

In his sixth issue, Donnelly asserts that his trial counsel provided ineffective assistance by failing to question a particular witness. The doctrine of ineffective assistance does not apply to civil cases when there is no constitutional or statutory right to counsel. *In re P.S.*, 505 S.W.3d 106, 110 (Tex. App.—Fort Worth 2016, no pet.) ("The doctrine . . . does not extend to civil cases in general."); *Maki*, 2013 WL 4121229, at *6 (declining to reverse protective order based on allegations of ineffective assistance of counsel); *see, e.g.*, *McCoy v. Tex. Instruments, Inc.*, 183 S.W.3d 548, 553 (Tex. App.—Dallas 2006, no pet.) (stating doctrine of ineffective assistance of counsel does not extend to civil cases).

Donnelly cites no authority supporting—and wholly fails to argue in his brief—that there is a constitutional or statutory right to counsel in a protective-order case. Nor are we aware of any authority supporting the contention. Accordingly, we overrule Donnelly's sixth issue.

## V. Undue and Unconstitutional Burden

In Donnelly's final issue, he argues that the trial court erred by issuing a protective order prohibiting him from accessing the university at which he and K.T. were enrolled, "their by [sic] precluding and/or immensely inhibiting" him from completing his doctoral education and "present[ing] an undue and unconstitutional

19

burden" on him. He does not assert which of his constitutional rights, if any, is burdened by this provision of the order. K.T. responds that there is no constitutional right to higher education and that the Code of Criminal Procedure allows the trial court to issue the provision.

The trial court was authorized by statute to prohibit Donnelly from going to or within five hundred yards of the university at which both he and K.T. are enrolled. *See* Tex. Code Crim. Proc. Ann. art. 7B.005(a)(2)(B); Tex. Fam. Code Ann. § 85.022.

The objective of protective orders issued under Chapter 7B of the Code of Criminal Procedure is to protect victims of the enumerated criminal offenses, including stalking. *Wargocz*, 2018 WL 4924755, at *8 (discussing prior version of Chapter 7B). Article 7B.005 of the Code of Criminal Procedure expressly allows a trial court to prohibit a person alleged to have committed the offense of stalking from "going to or near the residence, place of employment or business, or child-care facility or school of the applicant." Tex. Code Crim. Proc. Ann. art. 7B.005(a)(2)(B); *see* *Straughan*, 2022 WL 2977049, at *3.

Protective orders issued under the Family Code are intended to effectuate a similar objective. *See Roper v. Jolliffe*, 493 S.W.3d 624, 634–35 (Tex. App.—Dallas 2015, pet. denied) ("The purpose of the protective order statute is not to remedy past wrongs or punish prior criminal acts; rather, it seeks to protect the applicant and prevent future violence."). To "prevent or reduce the likelihood of family violence," Section 85.022 enumerates certain acts or conduct that a trial court may prohibit a

20

person found to have committed family violence from performing. *See* Tex. Fam. Code Ann. § 85.022. Although Section 85.022 does not specifically list that the trial court may prohibit the protective-order respondent from going to or near the applicant's school or university, "[t]here is no authority that the provisions of [S]ection 85.022 were intended to be an exhaustive list of remedies available to a trial court when issuing a protective order that will effectively prevent family violence," and Donnelly cites no such authority. *See Rodriguez v. Doe*, 614 S.W.3d 380, 386 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also Mahmoud v. Jackson*, No. 05-21-00302-CV, 2022 WL 2167683, at *6 (Tex. App.—Dallas June 16, 2022, no pet.) (mem. op.); *Lei Yang v. Yuzhuo Cao*, 629 S.W.3d 666, 672–73 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (rejecting argument that Section 85.022 lists the only prohibitions and restrictions a trial court may order); *Roper*, 493 S.W.3d at 636, 639 (upholding protective order that prohibited respondent from going within five hundred feet of applicant's school).

Assuming that Donnelly sufficiently raised his constitutional complaints in the trial court, any appellate review concerning the alleged unconstitutional application of a statute begins with the presumption that the statute is constitutional, and the party challenging the application of the statute has the "high burden" of showing its alleged unconstitutionality. *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 754 (Tex. 2020) (quoting *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015)); *Aguilar v. Aguilar*, No. 02-11-00370-CV, 2012 WL 6632526, at *4 (Tex. App.—Fort Worth Dec.

21, 2012, no pet.) (per curiam) (mem. op.). Donnelly's brief states only that the protective order's "prohibit[ing him] from accessing the [u]niversity . . . presents an undue and unconstitutional burden on [him]." This argument, even assuming it were supported by any evidence in the record, is insufficient to overcome Donnelly's burden of showing the alleged unconstitutional application of either Article 7B.005 or Section 85.022. *See Aguilar*, 2012 WL 6632526, at *4. Indeed, there is nothing in either statute that precludes the trial court from ordering the complained-of provision.

We overrule Donnelly's final issue.

## VI. Conclusion

Having overruled all of Donnelly's issues, we affirm the trial court's protective order.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: June 29, 2023